## John Lowden *v.* The City of Cincinnati.

### (No. 7,931.)

1. An ordinance to grade or pave a public street and providing that " a special tax be assessed and collected from the owners of real estate abutting, etc., according to the ordinances in such case made and provided," is sufficient to authorize an assessment against the real estate, where the general ordinances in force at the time require a demand for the assessment first to be made on the owners and secondly, in default of payment, a seizure and sale of the real estate.
2. If the city fails to give the contractor an assessment, she is liable to an action; but reasonable time is allowed for the issue of an assessment after the completion of the public work.

John Lowden *v.* The City of Cincinnati.

SPECIAL TERM.—Action by a street contractor to recover in damages the value of work and labor in grading High street, from Parsons street to Springhill avenue, for causes alleged.

1st. That the city council could not issue a valid assessment.

2d. That the city council had failed to issue any assessment.

The municipal act of March 16th, A. D., 1839, (city ordinances, 1850, p. 38) empowered the city council, either with or without petition of the property owners, to grade, pave, etc., any street, lane, etc., or any part thereof and to levy and collect a special tax for defraying the costs and expenses of the same by an equal assessment on the feet front bounding the improvement.

On the 21st June, 1843, the city council of Cincinnati passed an ordinance directing the grading of High street, from Parsons street to Springhill Avenue, and that a " special tax be assessed and collected from the owners of real estate abutting and abounding thereon, to defray the expense of the same, according to the ordinances in such case made and provided." On the 10th July, 1843, a contract was entered into between the plaintiff and the city, by which the plaintiff agreed to do the work required by the ordinance *within the space of two years* from the date of the contract. He was to be paid upon the survey and estimate of the city surveyor, for excavating and grading, eighteen cents per cubic yard. But it was provided in the contract that the city should not be called on for any money due by virtue of the contract, until it was first demanded from the persons chargeable therewith, under an assessment to be made for that purpose. If he failed thus to obtain payment of his claim, he was to prosecute the same, if necessary, to final judgment, in the name of the city. If the decision was in favor of the city, he was to be paid out of the proceeds when collected ; if against the city, then the amount was to be paid by the city without further delay.

The work was not completed within the time limited. Upon application, the time was changed by three different resolutions of the city council, until the 21st July, 1848. The work was not completed at that time, and appeared to have been abandoned until May, 1853, when it was recommenced, and was continued from year to year until the 20th October, 1857, on which day a certificate was obtained from one of the city commissioners, that it had been completed. This certificate, when first given, stated that the work was done in a workman-like manner, striking out the words in the printed form, " according to contract." These words were afterward put in a new certificate, given after this suit was commenced. The delay arose from the circumstance that the contract had been mislaid, and was not found until about the time the suit was brought.

It appeared that, in fact, the work was finished in September or October, 1857, and had been completed, except in one place, sometime before, the delay having been occasioned by the necessity of a wall on one side of the street, to prevent its sliding. This wall, on a representation of its necessity, was built under the order of the city, in the years 1856–1857—whether with an express view to the completion of the contract, or to protect the street below, did not appear. No copy of the proceedings on the subject was furnished by either party.

No application to the city council, to be allowed to recommence the work in 1853, was shown, nor any proceeding of the council produced, having reference to the contract or work prior to the time of its completion. It was proved that, in 1853, on request of Roger McHugh, sub-contractor under Lowden, the city engineer furnished stakes and measurements, which would show how the grading was to be done; and, it was stated, that officers of the city, having charge of such works, were cognizant of the progress of this work.

It appeared that the sub-contractor had, previous to his commencing the excavation, made a contract with the Little

Miami Railroad Company, by which he was to receive twenty-eight cents per cubic yard, for earth delivered; and that he commenced this work to fulfill that contract. He was to be allowed, by plaintiff, the eighteen cents per yard for the amount he excavated, when recovered under the contract with the city.

No direct application was made to the city council for an assessment; but the matter was reported to the city council from the board of city improvements, on the 28th October, 1857, with an assessing ordinance. A communication was, at the same time, presented from the sub-contractor, claiming an interest in the assessment, and requiring that he should be protected. The matter was then referred to a committee. On the 25th November, 1857, the assessing ordinance was reported back, and was again referred. The reference was to the committee on law and the city solicitor. On the 23d December, 1857, a new assessing ordinance was reported, with the amended certificate of the city commissioner, from the committee on law, and this new ordinance was referred to the committee on public improvements.

In the meantime, on the 21st December, 1857, the plaintiff commenced the present action.

*Ketchum & Headington, Taft & Perry,* for plaintiff.

*Hart & Disney,* for defendant.

GHOLSON, J. The petition alleges, as reasons why no proceedings were taken against the owners of real estate, as required by the condition in the contract—1st. That the city council have refused to make an assessment, without which the plaintiff could not proceed against the owners of real estate. 2d. The original ordinance was illegal and void, and the city had no power to make any assessment, having illegally commenced the proceeding. Upon these points, by an answer of the city, issue is taken. The omission to de-

mand payment, as required, is set up as a bar to the plaintiff's recovery.

The first question which it is proper to consider in this case, is as to the validity of the ordinance passed on 21st June, 1843, in pursuance of which the contract was made. It is claimed that this ordinance is to be construed as imposing a tax on the owners of real estate personally, and to be collected not as a charge on their real property, but as a charge on them individually. The same rules of construction are to be applied in ascertaining the meaning of an ordinance of the city, as would govern in reference to any other code of laws. When it is said that a special tax is to be assessed and collected from owners of real estate, according to the ordinances in such case made and provided, we must refer to those ordinances to ascertain the meaning of any expression about which a doubt may arise. All laws *in pari materia*, should properly be examined, whether referred to or not, and much more when there is an express reference. By reference to the city ordinances, one will be found in force on the day the ordinance in question was passed, entitled " An ordinance to provide for levying and collecting special taxes for improving the pavements, streets, etc., passed May 29th, A. D. 1839. This, undoubtedly, must be one of the ordinances referred to ; and in its 4th section will be found the proceedings to enforce the payment of a special tax from the owners of real estate. These proceedings are, first, a demand on the owners for the amount assessed ; and, second, on their refusal to pay, a warrant to the proper officer of the city for the seizure and sale of the real estate, giving a right of redemption within a specified time. It is not true, therefore, upon a fair and reasonable construction of the ordinance of the 21st Jnne, 1843, that it exceeds the power of the city council in the respect claimed, and the objection made must fail.

It would, undoubtedly, be a valid and sufficient excuse for not making the demand on the owners of real estate, provided by the contract, that the city council refused to

John Lowden *v.* The City of Cincinnati.

give an assessment, and thereby put it out of the power of the contractor to comply with the condition. In point of fact, then, as shown by the evidence, has the city council so refused? No direct refusal has been shown from the records of the city. A proposition to make the assessment has been introduced in the ordinary mode, and from all that appears, is still pending and undetermined. Has there been such unreasonable delay and neglect as to amount to a refusal? Even if this could be claimed in an ordinary case, certainly, it would appear the circumstances of this case forbid any such conclusion.

The plaintiff, in July, 1843, undertook a job of work to be completed within two years. At his request, the time was extended for nearly three years longer. It was then left unfinished, and no effort to complete it made for nearly five years. It is then assigned for completion to another person, who, apparently, from the evidence, undertakes it as incident to another contract which he had made. It progresses for several years longer, and, finally, a certificate of its completion is submitted to the council, more than fourteen years after the contract had been entered into. Even admitting that there may have been circumstances accounting for, and explaining, to some extent, this unprecedented delay, surely, the city council was entitled to ask something more than the ordinary time for the transaction of such business, to inquire into those circumstances. It may be that it was their duty, notwithstanding the delay and neglect of the contractor, to issue the assessment. It may be that it was not; but they were entitled to a reasonable time to make the necessary inquiries, and become informed of all the circumstances. The plaintiff, certainly, is not in a position to complain of delay, unless clearly unreasonable.

There are, also, in the case circumstances explaining the delay on the part of the city council, in acting upon the proposition to make an assessment. When the ordinance was first introduced there was a petition in the nature of an intervening claim on the part of the sub-contractor. Again,

there was no regular and formal certificate that the work had been done according to contract. This certificate, in fact, was not procured and supplied until after this suit was commenced. It may be that the delay, in this respect, was occasioned by the fact that the contract had been mislaid. This might well happen in the long lapse of time that the completion of the contract had been delayed, and, as before observed, it is not for the plaintiff to urge others to extraordinary diligence. A delay of several months, might well have been allowed to find the written contract, and ascertain whether its terms had been complied with, when a period of nine years, in addition to those allowed, had been taken for its completion.

I do not intend to decide what might be the rights of the plaintiff, in the event the city council had distinctly refused an assessment. The decision of that question will involve considerations to which I have not adverted, and, particularly, one transaction as to which the information before us is quite meager; I allude to the recent building of a wall by the city, which, it is said, was to enable the plaintiff to complete the work under the contract. Still less is it for me to decide, as to the duty of the city council to make an assessment under all the circumstances of this case. That is a matter for the judgment and discretion of the city council. I do, however, decide that, in the attitude in which the case is now presented, the plaintiff has not satisfied me that there has been either a refusal or any neglect which would amount to a refusal on the part of the city council, to make an assessment. The plaintiff, therefore, from all that appears in this case, has not been prevented by the defendant from complying with the condition in his contract, and, therefore, can not recover.

Judgment for defendant.